WILLIAM LAYTIN et al., Trustees, etc., Respondents, v. ELLEN
LOUISA DAVIDSON et al., Appellants.

The will of L. gave to his executors his estate, real and personal, in trust,
to pay debts and legacies and to construct a burial vault, "and upon the
further trust" to divide the residue into five equal parts, the income of
one part to be paid to each of the testator's five children during life, and
upon the death of a child his or her share to be distributed as prescribed.
The executors had a final accounting in 1877, and were allowed full com-
missions; the amount of the residuary estate was adjudged, and the
surrogate's decree directed them to retain and hold the same "as trus-
tees" under the will. Upon the death of one of the testator's children
in 1882 the trustees applied to the surrogate for a judicial settlement
of their account. They claimed to be allowed one-half commissions
on the whole capital of the trust fund, and one-half in addition on the
one-fifth directed to be distributed. *Held*, that the will contemplated a
time when the duties of the executors, as such, should cease and they
should assume the character exclusively of trustees; that while the de-
cree upon settlement of their accounts did not in terms discharge the
executors, that was its legal effect; and that, as trustees, they were en-
titled to the commissions claimed; also *held* the fact that they had not
made an actual division of the trust fund into shares, as directed, did
not change the question.

(Argued February 26, 1884; decided March 11, 1884.)

APPEAL from order of the General Term of the Supreme
Court, in the second judicial department, made May 14, 1883,
which modified a decree of the surrogate of the county of
Westchester, so as to adjudge that respondents as trustees
under the will of William Laytin, deceased, are entitled to
commissions as trustees in addition to their commissions as
executors. (Reported below, 29 Hun, 622.)

The material facts are stated in the opinion.

*Morgan J. O'Brien* for appellants. As the law now stands
there is no provision fixing the rate of compensation of testa-
mentary trustees. (Redf. on Surr. [2d ed.] 701, note 9;
*Matter of Roosevelt*, 5 Redf. 601; *Manning* v. *Manning*, 1
Johns. Ch. 527.) The mere fact of the direction in a will to
the executors to carry out or execute certain trusts, did not

create the executors testamentary trustees as contemplated by the statute. (*Stoggs* v. *Jackson*, 2 Barb. Ch. 186, 1 N. Y. 206 ; *Dunn* v. *Judge*, 11 East, 288 ; *Bogert* v. *Hertell*, 4 Hill, 492 ; *Clark* v. *Clark*, 8 Paige, 152 ; *Hasuck* v. *Rogers*, 9 id. 468.) Double commissions are not allowable on the transfer of the estate from one executor, or trustee, to another unless such other is directed by the will to take and hold it upon a separate and distinct trust. (*Ward* v. *Ford*, 4 Redf. 34 ; *Valentine* v. *Valentine*, 2 Barb. Ch. 430 ; *Mann* v. *Lawrence*, 3 Bradf. 426 ; *Westfield* v. *Westfield*, 1 id. 198 ; *In re Cannon*, 3 Redf. 47 ; *Drake* v. *Price*, 5 N. Y. 430 ; *Hall* v. *Hall*, 78 id. 535 ; *Hurlburt* v. *Durant*, 88 id. 126.) Merely closing up the duties as executors and retaining the fund for the beneficiaries under the will is not a receiving and paying so as to entitle to commission. (*Matter of Kellogg*, 7 Paige, 265 ; *Foley* v. *Egan*, 13 Abb. [N. S.] 362 ; *Betts* v. *Betts*, 4 Abb. N. C. 324–437.)

*Albert G. McDonald* for respondents. The respondents are testamentary trustees and are now entitled as trustees to their commissions on the capital of the trust estate; this right is no way impaired or affected by the fact that heretofore, upon their final accounting as executors, they had received their commissions as executors. (*Hurlburt* v. *Durant*, 88 N. Y. 121 ; *Drake* v. *Price*, 5 id. 430 ; *Hall* v. *Hall*, 78 id. 536 ; *Cram* v. *Cram*, 2 Redf. 244 ; *In re Pike*, id. 255 ; *In re Carman*, 3 id. 46 ; *Ward* v. *Ford*, 4 id. 34 ; *Matter of Roosevelt*, 5 id. 601 ; *Hall* v. *Campbell*, 1 Dem. 415 ; *Laytin* v. *Davidson*, 29 Hun, 622 ; *Blake* v. *Blake*, 30 id. 469 ; Code of Civ. Pro., § 2514, subd. 6 ; id., §§ 2736, 2811, 2817, 2819, 2688 ; *Meeker* v. *Crawford*, 5 Redf. 450.) The respondent's commissions for "receiving and paying out" should be calculated as if one-half were for receiving and the other half for paying out, the rate being the same as that allowed executors and administrators. (*Matter of Kellogg*, 7 Paige, 265 ; *Matter of Roberts*, 3 Johns. Ch. 43 ; *Howard* v. *Davis*, 4 Abb. Pr. 71 ; *Ward* v. *Ford*, 4 Redf. 34 ; *Matter of Roosevelt*, 5 id. 601.)

ANDREWS, J. By the will of William Laytin the testator gives to his executors his real estate and personal property in trust to pay debts and legacies and to construct a burial vault, and "upon the further trust," in substance, to divide the residue of his estate into five equal shares, and to pay the income of one share to each of his five children for life, and on the death of any child to distribute the principal of the share of the one so dying among his grandchildren then living, and the issue of any deceased grandchild, such issue taking the share the parent would have taken if living. The testator gave to his wife an annuity of $7,000 for life. The executors on a final accounting before the surrogate in 1877 were allowed full commissions. The capital of the estate then remaining in the hands of the executors was adjudged to be $1,4300,38.01, which by the decree of the surrogate they were directed to retain and hold "as trustees under the last will and testament of William Laytin, deceased." In 1882, after the death of one of testator's daughters, the trustees applied to the surrogate for a judicial settlement of their account. A decree was made by the surrogate in that proceeding, May 10, 1882, settling the account to that time, and distributing the one-fifth share of the capital of the estate, which he found amounted to the sum of $295,999.10, without taking into account $100,000 of bonds of the city of New York, set apart by the trustees to produce the annuity to the testator's widow, and another item of $4,944, not then in a situation to be divided. The decree further adjudged that after making the distribution directed, and crediting the payments allowed to the trustees, the capital of the estate remaining in their hands was $1,288,940.42. The trustees claimed on this accounting to be allowed one-half commissions on the whole capital of the trust fund, and one-half commissions on the one-fifth share of the capital directed to be distributed by the decree. The claim was disallowed by the surrogate, but the General Term on appeal reversed the decree of the surrogate in this particular, and decided that the trustees were entitled to commissions in their character as trustees, as claimed in their behalf. We concur with the decision of the General Term.

The will clearly contemplated a period of time when the duties of the executors as such should end, and they should assume the character exclusively of trustees for the widow and children of the testator. The duty to pay debts, and the legacies presently payable, and to construct a burial vault was strictly executorial, and upon the accomplishment of these purposes, the property was given "upon the further trust" to divide the residue, etc. The duty of division into shares, and to receive and apply the income of the several shares to the use of the beneficiaries respectively, could not be performed until the residue should be ascertained by an accounting. The decree on the accounting of the executors in 1877, embraced a statement of the executors' account as settled and allowed by the surrogate, showing the payment of debts and legacies, and stating the balance in their hands. The decree did not in term discharge the executors, but this was the reasonable intendment and legal effect of the direction that they should retain and hold the whole balance of the estate as trustees under the will. The fact that the trustees have not made an actual division of the trust fund into shares, as directed by the will, does not, we think, change the question. The aggregate fund has since the decree of 1877 been held by them in their character as trustees, and the duty of division may now be performed. The right to commissions as trustees cannot turn upon the fact that no actual division has yet been made. A denial of commissions on that ground would simply postpone their allowance until the actual separation. The will, as has been said, contemplated an eventual separation of functions and duties. The executors have upon a final accounting as executors been discharged as such. The fund has become exclusively a trust fund under the will, to be held by the trustees during the life of the beneficiaries named. The duties now to be performed by them are such as are usually devolved upon trustees of express trusts, and supervene upon the termination of the duties strictly executional, imposed upon them by the will.

The question of double commissions has been very recently considered by this court in the opinion of FINCH, J., in *John-*

*son* v. *Lawrence* (February 26, 1884), * and we think this is a case in which under the rule there laid down double commissions may be claimed. The jurisdiction of the surrogate to award commissions to testamentary trustees, since the Code of Civil Procedure, in a proper case, has been assumed in several cases. (*Hurlburt* v. *Durant*, 88 N.Y. 121 ; *Johnson* v. *Lawrence*, *supra*.) It was fully considered by the surrogate of New York (*In re Roosevelt*, 5 Redf. 601), and we concur in his opinion upon this question.

The order should be affirmed.

All concur.

Order affirmed.